PER CURIAM
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Tracey Michel Favorite, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Count I
In November 2014, respondent submitted a rental application for a townhouse owned by Brett Morris. Respondent requested immediate occupancy and completed the lease agreement on November 22, 2014. The terms of the lease required an initial payment, including a deposit, a pro-rated sum for November, and rent for December. Respondent provided Mr. Morris with temporary check drawn on a North Carolina bank in the amount of $3,575. Mr. Morris attempted to deposit the check, but it was returned for insufficient funds.
After Mr. Morris notified respondent of the issue, she offered him an explanation for the NSF check and then advised that she would give him a second check. Mr. Morris, who normally requires a cashier's check after a tenant presents an NSF check, accepted a second temporary check from respondent because she said she had recently relocated and that she was a lawyer employed with a law firm. The second check also was returned for insufficient funds.
Despite her assurances that money was forthcoming, respondent did not pay Mr. Morris for her use of the townhouse. Mr. Morris advised respondent that he would start the eviction process and contact the Jefferson Parish District Attorney's Office. He then posted an eviction notice on the townhouse door and called the district attorney's office. Respondent vacated the premises in late December.
Criminal charges arising from the issuance of the worthless checks are pending against respondent. In November 2014, she was charged with issuing worthless checks, a felony, in violation of La. R.S. 14:71. The docket summary reflects that respondent failed to appear on several occasions. Attachments were issued in March 2015, May 2015, and July 2015.
Respondent received notice of the disciplinary complaint on June 2, 2016. Three months later, she provided the ODC with a brief initial response and indicated therein that she would be supplementing her response. She did not. During her sworn statement, respondent provided explanations for the attachments and offered that she would "take care of all that as soon as possible." According to the online database for Jefferson Parish, a third attachment remains outstanding.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's *1029 honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II
In December 2015, respondent hired attorney Jasmine White as an associate. On February 12, 2016, respondent issued a $2,110.96 check to Ms. White and a $1,500 check to Devon Coleman, a third-party vendor. Both checks were written on respondent's Chase Bank account. After Mr. Coleman deposited his check, he was advised that the check had been issued on a closed account. Upon learning of this, Ms. White did not deposit her check. Respondent instructed Ms. White to destroy the check, but she did not.
On February 25, 2016, respondent issued a $4,542.67 check to Ms. White. The check, which was written on respondent's Bank of America account, was returned for insufficient funds. Ms. White notified respondent of the returned check. The next day, respondent terminated Ms. White. Respondent maintains that she did not issue Ms. White a worthless check.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) and 8.4(c).
Count III
In December 2015, respondent hired Alicia Wiley as her office manager. On February 12, 2016, respondent issued payroll checks from her personal checking account to Ms. Wiley and to other employees. Respondent then advised Ms. Wiley that she would be notified after arrangements were made with her bank so employees could cash their checks. Later that same day, respondent advised employees not to cash the checks because it was "bad practice" to issue payroll checks from a personal account. The employees were then asked to destroy the checks. Ms. Wiley subsequently learned from Mr. Coleman (Count II) that her check, drawn on Chase Bank, was issued on a closed account. On February 25, 2016, respondent issued a $2,985.12 check to Ms. Wiley from her Bank of America account. The check was returned for insufficient funds.
During her sworn statement, respondent advised the ODC that the Chase Bank account was closed in the spring of 2016, but she then expressed uncertainty as to when the account was closed. Respondent agreed to provide the ODC with that information, but failed to do as promised. Respondent stated that if she did in fact write checks on a closed account, it would have been "by mistake."
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) and 8.4(c).
Count IV
On December 1, 2015, respondent and Jasmine White (Count II) visited DKI Office Furniture to select office furniture and other items. The selected items were to be delivered to respondent's law office the following day. Payment was to be made at delivery.
Upon delivery, respondent presented a $3,940.95 check, representing the amount of the invoice. The check, dated December 3, 2015, was drawn on a Homeland Federal Credit Union account in the name of Terry Williams, respondent's mother. The check, presumably signed by Ms. Williams, was returned as having been written on a closed account. The bank advised DKI that the account was closed prior to the date on which the check was written.
Repeated efforts to recover the amount due were unsuccessful. In early 2016, respondent promised that she would issue a new check to DKI, but she failed to do so.
*1030 DKI has not recovered any of the furniture or other items delivered to respondent.
The Jefferson Parish District Attorney's office filed felony charges against Terry Williams for issuing worthless checks, in violation of La. R.S. 14:71. DKI received from the district attorney's office a total of $400 in restitution in the form of cashier's checks; however, no further payments were forthcoming. On the advice of counsel, DKI did not cash the four $100 cashier's checks.
In August 2016, DKI filed a complaint against respondent with the ODC. During its investigation of the complaint, the ODC discovered that respondent is the defendant in a proceeding to evict her from her law office. On November 5, 2015, respondent signed a lease for office space at 650 Poydras Center. The lease called for the payment of a $1,576.75 security deposit and the prepayment of one month of rent in the amount of $1,576.75. A $3,253.50 temporary check, dated October 30, 2015, was issued from Woodforest National Bank, in the handwritten name of Tracey M. Favorite, Attorney at Law, but was returned for insufficient funds. A temporary replacement check, dated December 16, 2017, was issued from Regions Bank, in the handwritten name of "Favorite Law Group," but was also returned as the account was blocked/ frozen. The lawsuit also alleges that respondent approved $17,613.70 in tenant improvements, which was $5,482 in excess of the $12,131.70 allowance provided. Poydras Center received no money from respondent for rent or other costs associated with the lease. A judgment of eviction was signed on January 3, 2017.
On August 11, 2016, an ODC investigator visited the Poydras address in an attempt to serve respondent with a subpoena to appear for a sworn statement. When it appeared that no one was in the office, the investigator left her business card in the door asking respondent to contact her. Respondent finally submitted her initial response to the disciplinary complaint on September 8, 2016, but she did not respond to the ODC's requests for a supplemental response.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) and 8.4(c).
Count V
On January 13, 2016, respondent purchased items from Comeaux Furniture and Appliance Store. According to the itemized sale invoice, respondent purchased $8,005.01 worth of home furnishings, which were delivered on January 15, 2016 to the Josephine Loft apartments in New Orleans.
Comeaux had allowed respondent to purchase the items on "Take Home Layaway," which required a 25% deposit and a balance payoff in three equal payments of $2,001.25. Respondent provided Comeaux with four checks written on her Chase Bank account, as follows:
1. Check number 8085, dated 01/13/2016, in the amount of $2,001.26
2. Check number 8086, dated 02/19/2016, in the amount of $2,001.25
3. Check number 8087, dated 03/18/2016, in the amount of $2,001.25
4. Check number 8088, dated 04/06/2016, in the amount of $2,001.25.
According to bank records, check number 8085 was returned marked "Refer to Maker," and check number 8086 was returned marked "Closed Account." Check numbers 8087 and 8088 were likewise issued on a closed account.
On September 20, 2016, respondent was charged with issuing worthless checks, a felony, in violation of La. R.S. 14:71. The docket summary reflects that numerous *1031 arraignments have been continued due to the State's inability to locate respondent and that the State is attempting to obtain service on respondent in North Carolina.
In her response to the disciplinary complaint, respondent offers that the first check to Comeaux did not clear because the bank had placed a hold on her checking account after she "made a scratch out" on her deposit slip, which is considered an alteration. Respondent indicated that she could not correct the problem because Comeaux refused to allow her to change the checking account from which future payments would be drafted. Respondent indicated that she was told by Comeaux that she would have to "wait for the collection agency."
Employees of Comeaux informed the ODC that the company would not have accepted another personal check from respondent after her first check was returned unpaid; however, cash or a cashier's check would have been accepted. The company provided information to the ODC detailing its efforts to collect from respondent and provided a call log and copies of written correspondence. Comeaux received no money from respondent, and the furniture has not been recovered.
The ODC alleged that respondent's conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a), 8.4(b), 8.4(c), and 8.4(d).
DISCIPLINARY PROCEEDINGS
In March 2017, the ODC filed formal charges against respondent, as set forth above. Respondent initially failed to answer the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). In July 2017, respondent filed a motion to recall the deemed admitted order and filed an answer to the formal charges, generally denying all allegations. Respondent's motion was granted and the deemed admitted order was vacated. The matter then proceeded to a formal hearing on the merits.
Hearing Committee Report
After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings that are generally consistent with the underlying facts set forth above and made the following additional findings:
The ODC's witnesses and documentary evidence introduced at the hearing were credible. Between 2015 and 2017, respondent engaged in a pattern of issuing worthless checks, but made little effort to pay her debts. She showed no remorse for her worthless checks history that had occurred over a period approaching three years.
Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
After considering the ABA's Standards for Imposing Lawyer Sanctions , the committee found the following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of conduct.
After further considering respondent's misconduct in light of this court's prior jurisprudence addressing similar misconduct, the committee recommended respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
Disciplinary Board Recommendation
After review, the disciplinary board found that the hearing committee's factual findings are supported by the record, with one exception. The evidence shows that *1032 she issued multiple worthless checks between 2014 and 2016, rather than from 2015 and 2017, as found by the committee. Based on these facts, the board determined respondent violated the Rules of Professional Conduct as charged.
The board determined respondent violated duties owed to the public, the legal system, and the legal profession. She acted knowingly and intentionally by issuing multiple worthless checks over a three-year period, using worthless checks to pay for office furniture and for law firm employee wages, and failing to appear in criminal court, remaining a fugitive. Her misconduct caused actual harm to her employees, members of the public, and the legal profession. Much of the harm she caused has not been rectified. After considering the ABA's Standards for Imposing Lawyer Sanctions , the board determined the baseline sanction is disbarment.
The board found the following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of conduct, and indifference to making restitution. The sole mitigating factor found by the board is inexperience in the practice of law (admitted 2013).
After further considering this court's prior jurisprudence addressing similar misconduct, the board recommended respondent be disbarred. The board also recommended she be ordered to pay full restitution for any losses caused by her actions, to the extent restitution has not been made. The board further recommended respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield , 96-1401 (La. 11/25/96), 683 So.2d 714 ; In re: Pardue , 93-2865 (La. 3/11/94), 633 So.2d 150.
The record of this matter supports a finding that respondent engaged in a pattern of issuing worthless checks over a three-year period and presented a check drawn on a closed account in the name of her mother to pay for office furniture. This conduct amounts to a violation of the Rules of Professional Conduct as charged.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
The record supports a finding that respondent knowingly, if not intentionally, *1033 violated duties owed to the public, the legal system, and the legal profession, causing actual harm. The baseline sanction for this type of misconduct is disbarment. The record supports the aggravating and mitigating factors found by the board.[1]
The recommendation of disbarment is supported by several cases, which were cited by the board. See, e.g., In re: Lash , 97-0327 (La. 4/4/97), 691 So.2d 674 (attorney disbarred for four counts stemming from his criminal conviction for issuing worthless checks and theft); In re: Basile , 98-0900 (La. 5/29/98), 714 So.2d 687 (attorney disbarred for attempting to purchase merchandise with a stolen check; charges of prostitution and felony theft were pending against the lawyer in another jurisdiction, and she was later arrested for purchasing merchandise through the fraudulent use of her father's credit card); and In re: Coffman , 09-1165 (La. 9/25/09), 17 So.3d 934 (attorney disbarred for writing a $150,000 check on his client trust account, knowing the funds were not in the account and/or the account was closed, and failing to cooperate with the ODC in its investigation).
Considering this jurisprudence and the aggravating factors present in this case, we agree that disbarment is the appropriate sanction.
Accordingly, we will adopt the disciplinary board's recommendation and impose disbarment. We will also order respondent to make restitution to her victims.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, it is ordered that Tracey M. Favorite, Louisiana Bar Roll number 34921, be and she hereby is disbarred. Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make full restitution to her victims subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Although respondent has no record of imposition of formal discipline, in 2015, respondent agreed to enter into a diversion program prior to formal charges being filed against her by the ODC based on her purportedly failing to promptly pay a health care provider from settlement proceeds.